# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        No. CR 15-0776 JB

ADELE ANTONIO,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to Pre-Sentence Report, filed August 30, 2015 (Doc. 30)("Objections").  The Court held a sentencing hearing on August 20, 2015.  The primary issues are: (i) whether the Court should sustain Defendant Adele Antonio's objections to the factual allegations in the Presentence Investigation Report, disclosed July 15, 2015 ("PSR"), that the United States Probation office ("USPO") prepared; (ii) whether the Court should use § 2A2.2 of the United States Sentencing Guidelines rather than § 2A2.4 to calculate Antonio's base offense level; (iii) whether the Court should apply a 5-level enhancement under § 2A2.2(b)(3)(B) for causing a victim serious bodily injury; and (iv) whether the Court should apply a 6-level enhancement under § 3A1.2(c)(1) for assaulting a law enforcement officer in a manner creating a substantial risk of serious bodily injury.  The Court will sustain two of Antonio's objections and overrule one of her objections to paragraphs 14 of the PSR.  The Court will also sustain Antonio's objections to paragraphs 22, 50, and 96 of the PSR.  The Court will use § 2A2.2 to calculate Antonio's base offense level, because her felonious assault involved serious bodily injury.  The Court will apply a 5-level adjustment under § 2A2.2(b)(3)(B), because Antonio caused John Doe serious bodily injury when she kicked him

once in the head and once in the neck.  Finally, the Court will apply a 6-level adjustment under § 3A1.2(c)(1), because Antonio assaulted a law enforcement officer in a manner creating a substantial risk of serious bodily injury.  The Court will therefore sustain the Objections in part and overrule them in part.

I.   **THE COURT WILL SUSTAIN TWO OF ANTONIO'S OBJECTIONS TO PARAGRAPH 14 OF THE PSR, OVERRULE ONE OF HER OBJECTIONS TO PARAGRAPH 14, AND SUSTAIN HER OBJECTIONS TO PARAGRAPHS 22, 50, AND 96 OF THE PSR.**

The Court will sustain Antonio's objection to paragraph 14 of the PSR, which states that she "kicked John Doe twice in the neck."  PSR ¶ 14, at 4.  When Doe was interviewed on June 19, 2015, he stated that Antonio "kicked him in the face and after he moved her out of the way, she then kicked him on the left side of his neck."  PSR ¶ 26, at 7.  This passage suggests that Antonio kicked him twice, but only once in the neck.  Accordingly, the Court will sustain Antonio's objection and amend paragraph 14 to say: "After Ms. Antonio fell down she landed on her buttocks and kicked John Doe twice -- once in the face and once in the neck -- causing John Doe to almost blackout."  PSR ¶ 14, at 4.

The Court will sustain Antonio's second objection to paragraph 14 of the PSR, which appears to be that the PSR fails to note that she was barefoot when she kicked Doe.  During Doe's June 19 interview, he stated that he "was surprised by the defendant's actions as she was handcuffed, intoxicated, barefoot, and made an effort to assault him while walking through cactus stickers and animal feces."  PSR ¶ 26, at 7.  The Court will thus amend paragraph 14 to state: "After Ms. Antonio fell down she landed on her buttocks and kicked John Doe twice -- once in the face and once in the neck -- causing John Doe to almost blackout.  Antonio was barefoot at the time."  PSR ¶ 14, at 4.

Next, Antonio objects to the PSR's statement that the doctor from Acoma-Canoncito-Laguna Hospital ("ACL hospital") referred Doe to UNMH because she was concerned about "a fractured Hyoid Bone in his neck and airway blockage from swelling."  PSR ¶ 14, at 4.  Antonio says that the doctor referred Doe to UNMH, because she thought that the kick to the throat "could have resulted in loss of airway from edema."  It is unclear to which document Antonio is referring.  The Court has closely examined the medical records which Antonio filed and has not found the statement which Antonio quotes anywhere within those documents.  As Antonio has given the Court no reason to question the PSR's assertion, the Court will overrule her objection to that statement in paragraph 14 of the PSR.

Next, Antonio challenges the PSR's assertion in paragraph 22 that "John Doe's injuries could have resulted in death had he not received medical treatment immediately and he could have suffered brain damage due to loss of oxygen."  It is unclear on what information this statement is based.  The previous paragraph of the PSR, which contains the BIA agent's notes from the physician who treated Doe at UNMH, states that, "when the neck is injured the airway becomes compromised and there may be a loss of consciousness or a chance of damaged arteries that go to the brain."  PSR ¶ 21, at 6.  That paragraph does not mention, however, that Doe's injuries could have resulted in death or brain damage "had he not received medical treatment immediately."  PSR ¶ 22, at 6.  The Court agrees with Antonio that Doe's test results note that none of his bones were broken, that he was released from the emergency room that same night at about 3:00 a.m., and that he even drove himself home after being released from the hospital.  All of those facts cut against the PSR's assertion that Doe's injuries could have resulted in death or brain damage.  As the PSR does not provide any basis for those assertions, and the remainder of the PSR undermines those assertions, the Court will sustain Antonio's objection to paragraph 22

- 3 -

of the PSR and amend the second sentence of that paragraph to read: "John Doe's injuries could have compromised his airway, caused him to lose consciousness, or damaged the arteries that go to his brain."

Antonio also attacks paragraph 50 of the PSR for failing to note that "Ms. Antonio also suffered a stab wound through her right hand and a stab to the chest," and that her mother is "on probation for various alcohol abuse related offenses and continues to drink heavily."  The Court will sustain Antonio's objection and amend paragraph 50 of the PSR to include those statements at the end of the sentence which states that "[s]he also caused physical harm to Dorian Lowden." PSR ¶ 50, at 12.

Antonio also challenges paragraph 96 of the PSR, arguing that she "no longer has any interest in a 2003 Oldsmobile, Alero as that car was totaled in an accident and is no longer operational."  Antonio adds that "the 1980 Courier F150 Pickup was the sole property of her ex-husband, Mr. Cheromiah."  The Court will sustain these objections and add the following sentences to the end of paragraph 96: "Antonio no longer has any interest in the 2003 Oldsmobile Alero, because it was totaled in an accident and is no longer operational.  The 1980 Courier F-150 Pickup is the sole property of Mr. Cheromiah."

II.     **THE COURT WILL USE § 2A2.2 TO CALCULATE ANTONIO'S BASE OFFENSE LEVEL AND WILL APPLY A 5-LEVEL ADJUSTMENT UNDER § 2A2.2(b)(3)(B).**

The Court will overrule Antonio's objection to the PSR's use of § 2A2.2 to calculate her base offense level rather than § 2A2.4.  Section 2A2.4 of the Sentencing Guidelines applies to obstructing or impeding officers, but it provides a cross-reference, stating that, "[i]f the conduct constituted aggravated assault, apply § 2A2.2."  U.S.S.G. § 2A2.4(c).  Application Note 1 to § 2A2.2 explains that "[a]ggravated assault means a felonious assault that involved (A) a

dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony."   U.S.S.G. § 2A2.2, cmt. n.1 (internal quotation marks omitted).

The only basis for finding aggravated assault that the United States has advanced is that Antonio's felonious assault involved serious bodily injury.   The Guidelines define "[s]erious bodily injury" as "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."   U.S.S.G. § 1B1.1 cmt. n.1(L).   "Bodily injury," on the other hand, "means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."   U.S.S.G. § 1B1.1 cmt. n.1(B).

A few factors cut against finding that Doe suffered a serious bodily injury.   First, Antonio kicked Doe with her bare feet.   If Antonio had kicked Doe while she was wearing shoes or boots, the Court would be more inclined to find that he suffered "serious bodily injury."   Bare feet typically do not have a similar capacity to inflict injury as shoes or boots do. Second, the circumstances of Doe's emergency room visit.   Page one of the Emergency Department Notes, filed August 3, 2015 (Doc. 31-1)("Notes"), indicates that Doe was admitted to emergency room at 12:37 a.m. on February 13th.   See Notes at 1.   Page three of those notes states that he was discharged at 2:17 a.m. that same day -- a total of less than two hours.   See Notes at 3.   The Emergency Department also only prescribed Doe twelve painkillers -- enough to last three days. See Notes at 3.   Finally, Doe's test results were negative for fractured bones and injury to his blood vessels, see PSR ¶ 21, at 6, he did not have facial lacerations or lacerations inside his mouth, see PSR ¶ 21, at 6, his doctor concluded that there was "no evidence of tracheal injury,"

Notes at 3, and he even drove himself home after being released from the hospital, <u>see</u> PSR ¶ 26, at 7.

On the other hand, a number of factors cut in favor of finding that Doe suffered serious bodily injury.  When the incident occurred, Doe "felt dizzy, in pain, and was concerned about his firearm as he was going to lose consciousness."  PSR ¶ 14, at 4.  EMS personnel observed Doe cough up blood with mucus.  <u>See</u> PSR ¶ 14, at 4.  Medical records received from the ACL hospital revealed that Doe "complained of trouble breathing, difficulty swallowing with excretion of bloody saliva and suffered from pain on the left side of his neck and his chest . . . was disoriented, but he did not have loss of consciousness."  PSR ¶ 20, at 6.  Doe "had several bruises around the area of his throat.  He was administered morphine for pain and intravenous fluid for nausea and vomiting and was then airlifted to UNMH for further medical care," PSR ¶ 20, at 6, because of concerns that he was suffering airway blockage from swelling, PSR ¶ 14, at 4.  A physician's assistant recommended a CT scan be conducted on Doe, because of concerns that his neck was seriously injured.  <u>See</u> PSR ¶ 14, at 4-5.  Doe "reported he experienced a tremendous amount of pain and he could not move his head up and down or left to right."  PSR ¶ 14, at 5.

On February 17, 2015, five days after the incident, Doe reported "his neck was sore and stiff and he had trouble turning to the left and picking up his head."  PSR ¶ 18, at 6.  At that time, Doe "did not have full motion of his neck."  PSR ¶ 18, at 6.  Doe "initially reported his pain level was nine and at the time of his interview he reported his pain between a 4 and 5 on 1 to 10 pain scale with 10 being the highest.  However, his pain increases to a seven when he turns his head to the side."  PSR ¶ 18, at 6.

Doe's victim impact statement was taken on June 19, 2015.  At that time, Doe reported that he "continues to experience pain when he moves his neck too rapid[ly] and he has trouble positioning his neck while sleeping."  PSR ¶ 22, at 6.  Doe explained that he used sick leave to miss work from February 13, 2015, through February 28, 2015.  PSR ¶ 22, at 6.  Doe advised that "the swelling of his neck lasted approximately two and a half weeks and the bruising on his neck went away approximately one month after."  PSR ¶ 27, at 8.  Doe said that, "[m]ore recently, if he turns his neck too fast, he feels pain and he cannot do things that are strenuous as it also causes pain."  PSR ¶ 27, at 8.  Doe also noted that he still has trouble sleeping because he cannot move his neck and jaw comfortably.  See PSR ¶ 27, at 8.

Although Doe only received treatment at the emergency room for a few hours and did not need to have surgery, he suffered a "protracted impairment of a function of a bodily member, organ, or mental faculty."  U.S.S.G. § 1B1.1 cmt. n.1(L).  Despite four months passing between the incident and when Doe's victim impact statement was taken, he was still suffering pain on June 19, 2015, from turning his neck too quickly and is still unable to perform strenuous activities because it causes him pain.  Cf. United States v. Hicks, 313 F. App'x 674, 675 (4th Cir. 2009)(finding no abuse of discretion where district court applied 5-level enhancement for serious bodily injury where the victim was still suffering blurred vision, residual bruising, and headaches four months after the incident).  Antonio admitted as much in her Plea Agreement when she stated that she "understand[s] that kicking John Doe . . . resulted in him having protracted loss of the use of his neck."  Plea Agreement ¶ 8, at 4, filed May 8, 2015 (Doc. 26)("Plea Agreement").  Further, Doe was in a "tremendous amount of pain," PSR ¶ 14, at 5, and, at one point, rated his pain a nine out of ten, PSR ¶ 18, at 6 -- both of which suggest that his injury involved "extreme physical pain," U.S.S.G. § 1B1.1 cmt. n.1(L).  See United States v. Jenkins, Nos. CR

12-13-GFVT, 12-14-GFVT, & 12-15-GFVT, 2013 WL 3158210, at *5 (E.D. Ky. June 20, 2013)(Van Tatenhove, J.)(finding serious bodily injury, in part, because the victim "characterized the physical pain resulting from [his] injuries as a nine out of ten").   Again, Antonio concedes as much in her Plea Agreement, when she stated that she "underst[ood] that kicking John Doe caused him to be in extreme physical pain."   Plea Agreement ¶ 8, at 4. Because Doe's injury falls within the Guidelines' definition of serious bodily injury, Doe committed aggravated assault, and the PSR properly calculated his base offense level using § 2A2.2 rather than § 2A2.4.

Antonio argues that § 2A2.2 should not apply, because she pled guilty to N.M. Stat. Ann. § 30-22-25(b), which provides:

> Whoever commits aggravated battery upon a peace officer, inflicting an injury to the peace officer which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a fourth degree felony.

N.M. Stat. Ann. § 30-22-25(b).  Antonio's argument is flawed, however, because the Court "may consider, as relevant conduct, actions that have not resulted in a conviction."  United States v. Ulibarri, No. CR 12-3182 JB, 2015 WL 4461294, at *15 (D.N.M. July 15, 2015)(Browning, J.). The Court's sentencing decisions are thus not limited to the crime to which Antonio pled guilty. Because Antonio's assault of Doe "involved . . . serious bodily injury," the Court will calculate her base offense level under § 2A2.2.  For the same reasons, the Court will overrule Antonio's objection to the PSR's imposition of a 5-level adjustment under § 2A2.2(b)(3)(B).  Cf. United States v. Duran, 127 F.3d 911, 918 (10th Cir. 1997)(explaining that "the plain language of the guidelines indicates Congress intended for double counting to occur under § 2A2.2" in upholding a district court's application of a 4-level enhancement under § 2A2.2(b)(2)(B) for use of a

dangerous weapon even though the defendant's base offense level was calculated under § 2A2.2(a) for assault with a dangerous weapon with intent to do bodily harm).

### III.    THE COURT WILL APPLY A 6-LEVEL ADJUSTMENT UNDER § 3A2.3(c)(1).

The Court will also overrule Antonio's objection to the PSR's application of a 6-level enhancement under § 3A1.2(c)(1).  Aside from Antonio's argument that the Court should use § 2A2.4, and not § 2A.2.2 to calculate her base offense level -- an argument which the Court has already rejected -- Antonio asserts that "[t]he additional increase to the base offense level is not a matter that the parties agreed to, but more importantly is based on pure speculation."  Objections at 5.  It is unclear to what Antonio is referring, but to the extent that she argues that there is no factual basis to the Court's application of § 3A1.2(c)(1), the Court disagrees.

Section 3A1.2(c)(1) provides for a 6-level adjustment if, "in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom . . . ."  U.S.S.G. § 3A1.2(c)(1).  Antonio does not argue that she was unaware that Doe was a law enforcement officer.  Nor does she assert that her actions did not "creat[e] a substantial risk of serious bodily injury."  U.S.S.G. § 3A1.2(c)(1).  Instead, it appears that Antonio finds the factual basis of this adjustment unreliable.  Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct. The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  See United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)[1]("The district court's

---

[1]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R.

determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review."). The evidence and information upon which the court relies, however, must have sufficient indicia of reliability. See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). Antonio has not provided -- and the Court has been unable to find -- a reason to question the PSR's allegations of her conduct. Even if the Court accepts all of Antonio's factual disputes, they do not alter the fact that she kicked a law enforcement officer in the neck. The Court has already found that those actions caused Doe serious bodily injury; it therefore stands to reason that Antonio's actions satisfy § 3A2.1's lesser burden of "creating a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(c)(1). The Court will therefore overrule this objection.

**IT IS ORDERED** that the objections in the Defendant's Objections to Pre-Sentence Report, filed August 30, 2015 (Doc. 30), are overruled in part and sustained in part. The Court will: (i) sustain two of Defendant Adele Antonio's objections to paragraph 22 of the disclosed July 15, 2015 ("PSR"), that the United States Probation office prepared; (ii) overrule one of

---

32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that United States v. Schmidt has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

Antonio's objections to paragraph 22 of the PSR; (iii) sustain Antonio's objections to paragraphs 22, 50, and 96 of the PSR; (iv) overrule Antonio's objection to paragraph 32 of the PSR; (v) overrule Antonio's objection to paragraph 33 of the PSR; and (vi) overrule Antonio's objection to paragraph 34 of the PSR.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Damon P. Martinez
    United States Attorney
Kimberly Brawley
David Adams
    Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Stephen P. McCue
    Federal Public Defender
Sylvia A. Baiz
    Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

        *Attorneys for the Defendant*