# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                 No. CR 15-0776 JB

ADELE ANTONIO,

     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

     **THIS MATTER** comes before the Court on the Defendant's Objections to Restitution, filed September 30, 2015 (Doc. 38)("Objections").  The Court held a restitution hearing on October 26, 2015.  The primary issue is whether Defendant Adele Antonio must pay $41,254.73 in restitution to Berkley Administrators[1] and the Indian Health Services ("IHS") for two outpatient visits and a helicopter transport from Acoma-Canoncito-Laguna Hospital in Acoma, New Mexico, to the University of New Mexico Hospital ("UNMH") in Albuquerque, New Mexico.  The Court concludes that, although Antonio caused the victim a compensable loss, the Plaintiff United States of America did not meet its burden to establish that the helicopter transport was medically necessary.  Accordingly, 18 U.S.C. § 3663A(b)(2)(A) does not require the Court to order $40,554.73 in restitution -- the amount which Berkley Administrators incurred for the helicopter transport.  The Court, therefore, overrules in part and sustains in part Antonio's Objections and orders Antonio to make $700 in restitution to the IHS.

---

[1]Berkely Administrators is a W.R. Berkley Company that "is a national provider of at-risk and alternative risk insurance program management services."  Berkely Risk, https://www.berkleyrisk.com/Pages/splash_new.aspx (last visited February 13, 2017).

## FACTUAL BACKGROUND

On the night of February 12, 2015, an Acoma Pueblo Police Sergeant, John Doe, responded to a domestic disturbance in Acoma, New Mexico.  See Presentence Investigation Report ¶ 12, at 4 (disclosed July 15, 2015)("PSR").  Luanna Antonio had called the police because her daughter, Adele Antonio (henceforward "A. Antonio"), was arguing with her and her other daughter, Erica Antonio.  See PSR ¶ 12, at 4.  When Doe arrived at the residence, he heard voices coming from nearby open fields.  See PSR ¶ 13, at 4.  Doe investigated, found A. Antonio intoxicated, arrested her for probation violation, and escorted her toward her residence. See PSR ¶ 13, at 4.  Shortly thereafter, A. Antonio's husband, Naham Kelsey, approached Doe. See PSR ¶ 13, at 4.  Doe told Kelsey not to approach, but Kelsey refused, and Doe stunned him with a Taser.  See PSR ¶ 13, at 4.  After being stunned with a Taser, Kelsey ran.  See PSR ¶ 13, at 4.  Doe placed A. Antonio on the ground and pursued Kelsey.  See PSR ¶ 13, at 4.  As Doe apprehended Kelsey, both men fell onto the ground.  See PSR ¶ 13, at 4.   At that time, A. Antonio appeared behind the two men.  See PSR ¶ 13, at 4.  A. Antonio unsuccessfully attempted to kick Doe in the face; Doe and A. Antonio struggled; and, during their struggle, A. Antonio kicked Doe twice in the neck.  See PSR ¶ 14, at 4.  Doe ultimately gained control of Kelsey and A. Antonio, and he escorted them to his patrol vehicle.  See PSR ¶ 14, at 4.

Emergency Medical Services ("EMS") personnel responded to the scene and, after observing Doe "cough up blood and mucus," provided him with medical assistance.  PSR ¶ 14, at 4.  EMS transported Doe to Acoma-Canoncito-Laguna Hospital for medical treatment.  See PSR ¶ 14, at 4.  The physician assistant at Acoma-Canoncito-Laguna Hospital recommended that Doe receive a CT scan because of the danger that a neck injury presented.  See PSR ¶ 14, at 4-5. Doe was airlifted to UNMH, because of concerns that, if Doe had a fractured bone in his neck, it

would cause swelling and block his airway.  <u>See</u> PSR ¶ 14, at 4.  UNMH treated Doe and released him in the early morning of February 13, 2015.  <u>See</u> PSR ¶ 14, at 5.  Doe then drove home.  <u>See</u> PSR ¶ 26, at 7.

Doe was temporarily placed on oxygen, and he was prescribed medication for pain and inflammation.  <u>See</u> PSR ¶ 27, at 7.  He used sick leave while he recovered.  <u>See</u> PSR ¶ 27, at 8. Workers compensation -- administered by Berkley Administrators -- covered his airlift expense, and Doe's insurers covered all other medical expenses.  <u>See</u> PSR ¶ 27, at 8; Second Addendum to the PSR at 1-2 (disclosed October 22, 2015)("Second Addendum to PSR").

## PROCEDURAL BACKGROUND

On February 20, 2015, the United States filed a criminal complaint against A. Antonio, charging her with assaulting Doe, in violation of 18 U.S.C. §§ 113(a)(6), 1153.  <u>See</u> Criminal Complaint, filed February 20, 2015 (Doc 1.)("Complaint").    On May 8, 2015, A. Antonio entered a plea agreement in which she pleaded guilty to a violation of 18 U.S.C. §§ 13, 1153 and N.M. Stat. Ann. § 30-22-25(B).  Plea Agreement at 2, filed May 8, 2016 (Doc. 26)("Plea Agreement").  In the Plea Agreement, A. Antonio stated:

> On or about February 12, 2015, in Indian Country, in Cibola County, in the District of New Mexico, I, Adele Antonio, an Indian, did assault John Doe, an Acoma Police Officer, and the assault did cause temporary loss or impairment of the function of John Doe's neck. . . .  Specifically, after John Doe placed me under arrest and in handcuffs, John Doe began pursuit of my significant other who was also intoxicated.  I followed John Doe and kicked him with my bare foot while he was attempting to place my partner under arrest.  When I kicked John Doe, the blow landed to his neck causing him to become disoriented.  I understand that kicking John Doe caused him to be in extreme physical pain, and resulted in him having protracted loss of the use of his neck.  As a result of the injury, John Doe did not return to work for approximately 18 days.

Plea Agreement at 3-4.  In the Plea Agreement, the parties memorialized their understanding "that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A."  Plea Agreement at 3.

Officer Charlotte Baca of the United States Probation Office ("USPO") prepared the PSR.  See PSR at 1-28.  The USPO disclosed the PSR on July 15, 2015.  See PSR at 1.  The PSR states that Doe did not request restitution.  See PSR ¶ 28, at 8.  The USPO worked with Doe, however, to obtain a release of information to attain financial information from his employer related to worker's compensation and to his insurance.  See PSR ¶ 28, at 8.  The USPO also contacted IHS to determine if IHS would request restitution.  See PSR ¶ 28, at 8.  The PSR noted that an Addendum would address additional information concerning restitution claims.  See PSR ¶ 28, at 8.

The Court sentenced A. Antonio to one year and one day imprisonment.  See Sentencing Minute Sheet at 1 (taken August 20, 2015), filed August 20, 2015 (Doc. 35)("Sentencing Minutes").  Looking to the record before it, the Court ordered A. Antonio to "make restitution to Indian Health Services in the amount of $700.00, and Berkley Administrators in the amount of $40,554.73."  Sentencing Minutes at 2.  The Court also held restitution open for ninety days to determine the total amount of restitution requested.  See Sentencing Minutes at 2.

### 1.   A. Antonio's Objections to Restitution.

On September 30, 2015, A. Antonio filed her Objections to restitution.  See Objections at 1-9.  First, A. Antonio objects to restitution, because "the victim in this case did not suffer any damages or economic loss due to the injury A. Antonio caused."  Objections at 2.  A. Antonio maintains that the victim "was not required to pay any out-of-pocket expenses and did not suffer any economic loss."  Objections at 3.  As A. Antonio contends, because Doe did not have to

reimburse the insurance company for his costs, neither should she.  See Objections at 3.  A. Antonio also argues that the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, does not warrant restitution, because she did not agree to pay restitution to any person or entity other than the victim.  See Objections at 3-5 (citing 18 U.S.C. § 3663A).

Second, A. Antonio objects to restitution regarding the helicopter transport, because "Doe's injuries were not life threatening and the medical transport was not medically necessary." Objections at 6.  A. Antonio emphasizes that the UNMH CT-scan records indicate that Doe suffered no broken bones, that Doe was released two-and-a-half hours after being admitted, and that Doe drove himself home after being released.  See Objections at 6; UNMH Emergency Dept. Notes at 4, filed August 3, 2015 (Doc. 31-1).  A. Antonio states that there is insufficient evidence for the United States to establish that the helicopter transport was medically necessary. She consequently argues that she should not incur the cost of the decision of the Acoma-Canoncito-Laguna Hospital physician's assistant to order helicopter transport.  See Objections at 7.

Third, A. Antonio contends that her conduct was not a proximate cause of the helicopter transport's cost.  See Objections at 7-8.  A. Antonio argues that the "lack of the ability of the physician's assist[ant] who was on duty" caused the decision to order helicopter transport. Objections at 8.  She consequently reasons that her kicking Doe in the throat was not a proximate cause of the helicopter transport's cost, and, therefore, she should not be made to pay for that cost.  See Objections at 8.

Fourth, A. Antonio states that the helicopter transport fee was exorbitantly high and that the United States introduced no evidence that the costs are justified.  See Objections at 8.  A. Antonio also suggests that the helicopter transport service was "fraudulently employed."

Objections at 8.  In support of this argument, A. Antonio points to several newspaper articles reporting on the cost of medical helicopter transport.  See Exhibit A to Defendant's Objections to Restitution, filed September 30, 2015 (Doc. 38-1)("Plaintiff's Newspaper Articles on Helicopter Transport").

2.    **The United States' Response.**

The United States responds to A. Antonio's Objections to restitution.  See Response to Defendant's Objections Regarding Restitution at 1-4, filed October 13, 2015 (Doc. 41)("Response").  The United States requests the Court to sustain in part and overrule in part A. Antonio's Objections.  See Response at 1.

First, the United States responds to A. Antonio's argument that, because Doe did not suffer out-of-pocket expenses, the Court should not order her to pay restitution.  See Response at 1.  The United States correctly notes that A. Antonio's argument poses the question whether an insurer that covers the costs of medical expenses is entitled to restitution.  See Response at 1. The United States maintains that there is no confusion in the law regarding whether a court may order a defendant to make restitution to insurers that cover a victim's losses.  See Response at 2 (citing United States v. Harwood, 854 F. Supp. 2d 1035 (D.N.M. 2012)(Browning, J.)(citing United States v. Wooten, 377 F.3d 1134 (10th Cir. 2004))).

Second, the United States responds to A. Antonio's proximate-cause argument.  See Response at 2.  The United States indicates there is no disagreement about the cause of the injury.  See Response at 2.  The United States then comments on the Acoma-Canoncito-Laguna Hospital:

> Unfortunately, the ACL Indian Health Service facility is not adequately staffed or equipped to handle many different forms of emergent medical need.  Due to their facility not having all of the necessary medical equipment to adequately determine what injuries a patient may have suffered, they often times rely upon

UNM hospital for assistance. . . .  The hospital located within the boundaries of Acoma reservation assures their community members that if they cannot adequately treat someone for their injuries, they will get them to a hospital that can treat them in adequate time.

Response at 2-3.

Third, in response to A. Antonio's arguments about the medical transport's high cost, the United States concedes that "the helicopter fees seem relatively high."  Response at 3.  The United States maintains that it "made contact with PHI Air Medical to request a breakdown of the bill, but to date nothing has been received."  Response at 3.  As a result, the United States concedes that it "does not have enough information to substantiate a $41,000 medical bill at this time."  Response at 3.  The United States maintains that the "$700 requested from Indian Health Services seems more than reasonable," but states that "anything above and beyond that is indeterminable . . . without further information from PHI."  Response at 3.

### 3.      The Second Addendum to the PSR.

On October 22, 2015, the USPO disclosed an addendum to the PSR.  See Second Addendum to PSR at 1-2.  First, the Second Addendum states that, although Presbyterian Health Services Health Insurance advised that it would submit a monetary restitution claim for medical services rendered to Doe while UNMH treated him, no documents have been received.  See Second Addendum to PSR at 1.  Second, the Second Addendum states that Berkley Administrators provided information revealing that workers compensation paid $40,554.73 for the helicopter transport from Acoma-Canoncito-Laguna Hospital in Acoma to UNMH.  See Second Addendum to PSR at 1.  The USPO states that "Airlift services were rendered by PHI AIR Medical LLC in the amount of $41,809 ($25,678 for Ambulance Service Air Transport 1 Way, and $16,131 for Rotary Wing Air Mileage)."  Second Addendum to PSR at 1.  According to the Second Addendum, the initial charge of $25,678.00 "includes costs for a private pilot,

paramedic, nurse, services rendered, equipment used and the amount of time flown with the patient from pick-up until the patient's destination for [his] next point of care." Second Addendum to PSR at 1. Of that total amount that PHI Air Medical charged, Berkley Administrators covered $40,554.73. See Second Addendum to PSR at 1. The Second Addendum concludes that "the amount of restitution owed is $41,254.73 between Indian Health Services and Berkley Administrators for two outpatient visits and being airlifted to UNMH." Second Addendum to PSR at 2.

**4.    The Hearing.**

The Court held a restitution hearing on October 26, 2015. See Transcript of Hearing at 1:2, taken October 26, 2015 (Tr.).[2] At the hearing, the Court gave the parties a proposed ruling. See Tr. at 2:4-5 (Court). First, regarding A. Antonio's Objection to restitution on the ground that Doe neither paid out-of-pocket expenses nor suffered an economic loss, the Court noted that 18 U.S.C. § 3664(j)(1) specifically states that "'if a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation.'" Tr. at 2:19-23 (Court)(quoting 18 U.S.C. § 3664(j)(1)). The Court also noted case law of the United States Court of Appeals for the Tenth Circuit holding that a district court must order restitution to be paid directly to an insurer in cases where there is a "victim within the meaning of the MVRA and if the insurer compensated the victim for some or all of his losses." Tr. at 3:1-4 (Court)(referring to United States v. Wooten, 377 F.3d at 1144). The Court found it clear that Doe "is the victim within the meaning of the MVRA." Tr. at 3:13-15 (Court). The Court reasoned that, because Doe's injuries generated his medical bills, A. Antonio was required to pay any amount equal to

_____

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

the cost of Doe's necessary medical and related services.  See Tr. at 4:1-4 (Court).  The Court

also reasoned that, because an insurance company compensated Doe for his losses, 18 U.S.C. §

3664(j)(1) requires the Court to order A. Antonio to make restitution to the insurance company.

See Tr. at 4:8-10 (Court).  Accordingly, the Court proposed to overrule A. Antonio's Objection

to restitution on the basis that Doe did not suffer an economic loss.  See Tr. at 4:15-18 (Court).

Second, the Court addressed A. Antonio's Objection to restitution on the ground that her

conduct did not proximately cause the helicopter transport.  See Tr. at 4:19-21 (Court).  The

Court found that there is "nothing speculative about how or why the helicopter transport

expenses were accrued."  Tr. at 5:3-5 (Court).  The Court also noted that the PSR properly

outlines the nexus between Doe's cause of injury and his treatment.  See Tr. at 5:7-9 (Court).  As

a result, the Court proposed to overrule A. Antonio's Objection regarding proximate cause.  See

Tr. at 5:13-15 (Court).  The Court noted, however, that it would double-check the law of

proximate cause in restitution.  See Tr. at 5:15-22 (Court).

Third, the Court addressed A. Antonio's Objection to restitution on the ground that the

helicopter transport was not medically necessary.  See Tr. at 5:22-24 (Court).  The Court found

that, on the record before it, "the [approximately] $42,000 helicopter transport was not medically

necessary."  Tr. at 6:3-5 (Court).  The Court noted that, "if the United States had submitted an

affidavit from a doctor stating that she examined the physician assistant's recommendation and

that she would have made the same decision," then such an affidavit likely would have been

sufficient evidence of medical necessity.  Tr. at 6:8-11 (Court).  Accordingly, the Court proposed

to sustain A. Antonio's Objection to restitution for the cost of the helicopter transport.  See Tr. at

6:14-15 (Court).

Next, the Court addressed the cost of the helicopter transport.  See Tr. at 6:16-18 (Court).  The Court noted the United States' concession that the helicopter fees seemed relatively high.  See Tr. at 6:19-20 (Court).  The Court noted its reluctance "to find by a preponderance of the evidence that the amount of the loss for the helicopter ride as [approximately] $42,000" absent a "documented breakdown of the bill."  Tr. at 6:25-7:3 (Court).  The Court also referred to the newspaper articles regarding the cost of helicopter transport that A. Antonio submitted.  See Tr. at 7:4-6 (Court).  See Plaintiff's Newspaper Articles on Helicopter Transport at 1-16.  The Court noted that, in this case, the cost of the helicopter transport was significantly higher than the documented costs of helicopter transport referenced in the newspaper articles that A. Antonio submitted.  See Tr. at 7:9-10 (Court).  The Court noted, however, that the instances of helicopter transport discussed in Plaintiff's Newspaper Articles on Helicopter Transport concerned different circumstances and might have related to shorter distances.  See Tr. at 7:5-8 (Court).

Regarding the cost breakdown of the helicopter transport, United States Probation Officer Charlotte Cde Baca directed the Court's attention to the Second Addendum to PSR.  See Tr. at 7:22-8:1 (Cde Baca).   The Second Addendum details, in summary fashion, the costs PHI incurred.  See Second Addendum to PSR at 1-2.  The Court then queried the specific nature of the costs.  See Tr. at 8:18-21.  Cde Baca related that approximately $25,000.00 of PHI's costs were a flat fee to cover "the cost for a nurse, the pilot, and the paramedic, and then whatever services they rendered," Tr. at 9:1-2 (Cde Baca), while the remaining approximately $16,000.00 of PHI's fee covered gas and mileage, see Tr. at 10:1-3.  The Court expressed skepticism regarding $25,000 to cover PHI's routine costs of a medical helicopter transport, in light of the costs referenced in Plaintiff's Newspaper Articles on Helicopter Transport.  See Tr. at 10:16-18.  See also Plaintiff's Newspaper Articles on Helicopter Transport at 2 (noting that PHI Air

Medical charged a $17,500 final bill); id. at 6 (noting that AirEvac Services charged a $32,700 final bill for a 20-mintue flight); id. at 11 (noting a $25,000 bill for a 46-mile helicopter transport); id. at 14 (noting that costs of helicopter transport range from $12,000 to $25,000). The Court then invited argument by the parties. See Tr. at 11:4-5 (Court).

The United States agreed with the Court's proposed ruling, see Tr. at 11:6 (Baiz), but stated that in cases involving more severe injuries, its argument would differ, because helicopter transport might be "more applicable in those cases," Tr. at 11:15-18 (Baiz).   The Court indicated its understanding of the realities of emergent, intensive medical care on rural, reservation lands, but responded that, in a different case, the Court would require more proof of medical necessity. See Tr. at 12:16-18 (Court)("I may have to have a medical doctor at one end or a medical doctor at the other end sort of tie it up.").

The Court ordered A. Antonio to make restitution to IHS in the amount of $700.00, paid in monthly installments of no less than 10% of A. Antonio's monthly income or no less than $100.00 per month, whichever is greater.   See Tr. at 13:4-11 (Court, Cde Baca, Baiz); Clerk's Minutes at 2 (taken October 26, 2016), filed October 26, 2015 (Doc. 43).   The Court noted its intention to issue a short opinion.   See Tr. at 13:12-14 (Court).

## LAW REGARDING RESTITUTION

Federal courts have no inherent power to order restitution; they may only do so when a statute so authorizes.   See United States v. Gordon, 480 F.3d 1205, 1210 (10th Cir. 2007).   In 1982, Congress enacted the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663 ("VWPA"), which authorizes district courts to, in their discretion, order restitution for victims of criminal conduct.   See 18 U.S.C. § 3663(a)(1)(A)(stating that a district court "may order" that a defendant make restitution to any victim of an offense or, if the victim is deceased, to the

victim's estate).  See also United States v. Quarrell, 310 F.3d 664, 677 (10th Cir. 2002)("Under

the VWPA, the court has discretion to order restitution 'when sentencing a defendant convicted

under this title . . . other than an offense described in section 3663A(c).'")(quoting 18 U.S.C.

§ 3663(a)(1)(A)).  The VWPA applies when a court sentences

> a defendant convicted of an offense under this title, section 401, 408(a), 409, 416,
> 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856,
> 861, 863) (but in no case shall a participant in an offense under such sections be
> considered a victim of such offense under this section), or section 5124, 46312,
> 46502, or 46504 of title 49, other than an offense described in section
> 3663A(c) . . . .

18 U.S.C. § 3663(a)(1)(A).  The VWPA requires that a court consider the defendant's economic

circumstances before ordering restitution.  See 18 U.S.C. § 3663(a)(1)(B).

In 1996, Congress enacted the MVRA, which made restitution mandatory in certain

cases, "particularly crimes of violence and theft crimes with identifiable victims who 'suffered a

physical injury or pecuniary loss.'"  United States v. Serawop, 505 F.3d 1112, 1117 (10th

Cir. 2007)(quoting 18 U.S.C. § 3663A(c)(1)).  The MVRA applies

> **(c)(1)** . . . in all sentencing proceedings for convictions of, or plea agreements
> relating to charges for, any offense --
>
> **(A)** that is --
>
> > **(i)** a crime of violence, as defined in section 16;
> >
> > **(ii)** an offense against property under this title, or under section 416(a) of
> > the Controlled Substances Act (21 U.S.C. 856(a)), including any offense
> > committed by fraud or deceit; or
> >
> > **(iii)** an offense described in section 1365 (relating to tampering with
> > consumer products); and
>
> **(B)** in which an identifiable victim or victims has suffered a physical injury or
> pecuniary loss.
>
> **(2)** In the case of a plea agreement that does not result in a conviction for an
> offense described in paragraph (1), this section shall apply only if the plea

specifically states that an offense listed under such paragraph gave rise to the plea agreement.

18 U.S.C. § 3663A(c)(1).  Unlike the VWPA, the MVRA does not permit a court to consider a defendant's economic circumstances when it imposes restitution.  See United States v. Serawop, 505 F.3d at 1118 (citing 18 U.S.C. § 3664(f)(1)(A)).

Other than the MVRA's mandatory requirement of restitution and the MVRA's requirement that a court not consider a defendant's economic circumstances, the "'provisions of the VWPA and MVRA are nearly identical in authorizing an award of restitution.'"  United States v. Serawop, 505 F.3d at 1118 (quoting United States v. Randle, 324 F.3d 550, 555-56 & nn.2-3 (7th Cir. 2003)). The term "victim," under both statutes means

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . .  In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 3663A(a)(2); 18 U.S.C. § 3663(a)(2).  Accordingly, both statutes have a proximate cause requirement in ascertaining which persons can recover restitution for a loss caused by the defendant's offense of conviction.  See 18 U.S.C. § 3663A(a)(2); 18 U.S.C. § 3663(a)(2).  Both statutes also state that, where an offense "resulting in bodily injury also results in the death of a victim," a court may order a defendant to "pay an amount equal to the cost of necessary funeral and related services."  18 U.S.C. § 3663(b)(3); 18 U.S.C. § 3663A(b)(3).  Additionally, both the VWPA and MVRA provide that, "to the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of any order of restitution outweighs the need to provide restitution to any victims, the court may decline to make such an order."  18 U.S.C. § 3663(a)(1)(B)(ii); 18 U.S.C. § 3663A(c)(3)(B).

- 13 -

Under both statutes, any dispute "as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence" and the "burden of demonstrating the amount of loss shall be on the attorney for the Government."  18 U.S.C. § 3664(e).  See United States v. Serawop, 505 F.3d at 1117 (stating that the United States bears the burden of proving amount of loss under the MVRA); United States v. Sundstrom, 221 F.3d 1354, 2000 WL 1005267, at *2 (10th Cir. 2000)(unpublished table decision)(stating that the United States bears burden of establishing amount of loss by a preponderance of the evidence under the VWPA). The burden of demonstrating the defendant's financial resources and the financial needs of the defendant's dependents is on the defendant.   See 18 U.S.C. § 3664(e)("The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant.").  "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires."  18 U.S.C. § 3664(e).

With respect to insurance, 18 U.S.C. § 3664(f)(1) provides that in "no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution."  18 U.S.C. § 3664(f)(1)(B).  Furthermore, 18 U.S.C. § 3664(j) provides

> **(1)** If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.
>
> **(2)** Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in --
>
> > **(A)** any Federal civil proceeding; and

**(B)** any state civil proceeding, to the extent provided by the law of the State.

18 U.S.C. § 3664(j). In United States v. Wooten, the Tenth Circuit affirmed the award of $17,751.58 in restitution for the loss of two motor vehicles, all of which went to insurance companies. See 377 F.3d at 1144. In United States v. Crawford, 169 F.3d 590 (9th Cir. 1999), the United States Court of Appeals for the Ninth Circuit affirmed the district court's restitution order under the VWPA and noted that

> there was no evidence establishing that the insurance proceeds received by the victim's family were intended to compensate for the funeral expenses, i.e., that the proceeds covered the "same loss" as those covered in the restitution order. Absent any showing that the civil proceeding resulted in compensation for the "same loss" under § 3664(j)(2), the district court was correct in its conclusion that there is no basis for reducing the disputed restitution order.

United States v. Crawford, 169 F.3d at 593 (footnotes omitted). The district court, in United States v. Crawford, had placed the burden of establishing an offset on the defendant pursuant to 18 U.S.C. § 3664(e), which provides that the court shall determine who bears the burden of demonstrating matters other than loss or financial resources. See 169 F.3d at 593 n.2. In United States v. Serawop, the Tenth Circuit also held that the district court appropriately determined, under 18 U.S.C. § 3664(e), that the defendant bore the burden of establishing the amount of an offset. See 505 F.3d at 1127, 1128 nn.5-6. See also United States v. Sheinbaum, 136 F.3d 443, 449 (5th Cir. 1998)("Logically, the burden of proving an offset should lie with the defendant."). Furthermore, in United States v. Francisco, No. 06-1015, 2008 WL 2367253 (D.N.M. Feb. 1, 2008)(Browning, J.), the Court held: "Regardless of the Yazzie's possible insurance recovery, however, Francisco continues to have an obligation to pay restitution."  2008 WL 2367253, at *10. Accordingly, a court may order a defendant to make restitution to an insurer that covered losses that the defendant caused and that a victim incurred. See Wooten, 377 F.3d at 1144.

## LAW REGADING THE MVRA'S PROXIMATE CAUSATION REQUIREMENT

For a court to order a defendant to pay restitution to a victim under the MVRA, the defendant's offense of conviction must be a proximate cause of the victim's loss. See 18 U.S.C. § 3663A(a)(2); United States v. Zander, 794 F.3d 1220, 1233 (10th Cir. 2015)(determining that "before awarding restitution, the district court must determine whether the crime of conviction was the proximate cause of the victim's loss"). At the outset, the MVRA's proximate causation requirement is essential to ascertain who is a "victim" for the MVRA's purposes. See 18 U.S.C. § 3663A(a)(2)(providing that "the term 'victim' means a person directly and proximately harmed as a result of the commission of the offense for which restitution may be ordered . . . ."). The concept of proximate causation plays a role not only in ascertaining who is a "victim" under the MVRA, but also in limiting which losses a victim may recover in restitution.

Under the MVRA, restitution is available only for losses that the defendant's offense of conviction causes a victim. See United States v. Zander, 794 F.3d 1220, 1233 (10th Cir. 2015)("Under the Mandatory Victim Restitution Act, 'the general rule [is] that restitution may only be ordered for losses caused by the offense of conviction.'")(quoting United States v. West, 646 F.3d 745, 751 (10th Cir. 2011)); United States v. Gordon, 480 F.3d at 1211 ("The MVRA, which amended the VWPA in 1996, did not change the general rule that restitution may only be ordered for losses caused by the offense of conviction."). Yet, a "victim" under the MVRA may not recover all the losses that the defendant's convicted offense causes. Both the MVRA's statutory provisions and the concept of proximate causation limit which losses -- among the set of losses that the defendant's convicted offense causes -- are recoverable in restitution.

For example, the MVRA limits restitution to those losses, which the defendant's convicted offense causes, that are medically necessary.  See 18 U.S.C. § 3663A(b)(2)(A).  The MVRA expressly defines which of a victim's losses an order of restitution shall cover:

> The order of restitution shall require that such defendant . . . in the case of an offense resulting in bodily injury to a victim . . . pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment. . . . .

18 U.S.C. § 3663A(b)(2)(A).

In addition to the statutory limit of medical necessity, the Tenth Circuit has also imposed a proximate causation limit on which losses a victim may recover under the MVRA.  See United States v. Zander, 794 F.3d at 1233.  In United States v. Zander, the Tenth Circuit said that, "before awarding restitution, the district court must determine whether the crime of conviction was the proximate cause of the victim's loss."  United States v. Zander, 794 F.3d at 1233 (citing United States v. West, 646 F.3d at 751; United States v. Diamond, 969 F.2d 961, 967-68 (10th Cir. 1992)).  A victim may recover in restitution -- among the set of losses that the defendant's convicted offense causes -- only those losses that the defendant's convicted offense proximately causes.  See United States v. Zander, 794 F.3d at 1233.

The Tenth Circuit's treatment of which losses are recoverable in restitution under the MVRA is analogous to the role that proximate causation plays in other statutory contexts.  See Paroline v. United States, 134 S. Ct. 1710, 1720-21 (2014)(holding that, under 18 U.S.C. § 2259, restitution is proper "only to the extent the defendant's offense proximately caused a victim's losses").  For example, "Title 18 U.S.C. § 2259(a) provides that a district court 'shall order restitution for any offense' under Chapter 110 of Title 18, which covers a number of offenses involving the sexual exploitation of children and child pornography in particular."  Paroline v.

United States, 134 S. Ct. at 1718.  Section § 2259(c) of Title 18 of the United States Code defines a "victim" as "the individual harmed as a result of a commission of a crime under the chapter," and § 2259(b)(3)(F) states that the term "full amount of the victim's losses" includes, among an enumerate lists of kinds of costs, "any other losses suffered by the victim as a proximate cause of the offense."  In Paroline v. United States, the Supreme Court relied on these two statutory provisions to hold that restitution is proper under § 2259 "only to the extent the defendant's conduct proximately caused a victim's losses."  Paroline v. United States, 134 S. Ct. at 1722.  In interpreting the statute, the Supreme Court noted that "[g]iven proximate cause's traditional role in causation analysis, the Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one."  Paroline v. United States, 134 S. Ct. at 1720 (citing Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 265-68 (1992); Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 529-36 (1983); CSX Transp. v. McBride, 131 S. Ct. 2630, 2646 (2011)(Roberts, C.J., dissenting)("We have applied the standard requirement of proximate cause to actions under federal statutes where the text did not expressly provide for it.")).  Accordingly, the Tenth Circuit's instruction that, under the MVRA, a district "must determine whether the crime of conviction was the proximate cause of the victim's loss," United States v. Zander, 794 F.3d at 1233, is consistent with the Supreme Court's willingness to read a proximate cause as a requirement of restitution under 18 U.S.C. § 2259, see Paroline v. United States, 134 S. Ct. at 1722.

Thus, proximate causation serves a dual function under the MVRA.  First, proximate causation is a requirement to determine who is a victim for MVRA purposes.  See 18 U.S.C. § 3663A(a)(2).  Second, proximate causation also limits what losses a victim is entitled to recover.  United States v. Zander, 794 F.3d at 1233.  The Tenth Circuit has instructed that, when

determining whether the defendant's offense of conviction is a proximate cause of a victim's loss, the Tenth Circuit has instructed that "[t]he crime of conviction will not be considered the proximate cause of the loss if there was an intervening cause, unless this intervening cause was 'directly related to the offense conduct.'"  United States v. Zander, 794 F.3d at 1233 (quoting United States v. Speakman, 594 F.3d 1165, 1172 (10th Cir. 2010)).   Moreover, the Supreme Court has recently outlined the concept of proximate cause at length:

> Every event has many causes, however, and only some of them are proximate, as the law uses that term.  So to say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result.  The idea of proximate cause, as distinct from actual cause or cause in fact, defies easy summary.  It is a flexible concept that generally refers to the basic requirement that . . . there must be some direct relation between the injury asserted and the injurious conduct alleged. The concept of proximate causation is applicable in both criminal and tort law, and the analysis is parallel in many instances.  Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct. A requirement of proximate cause thus serves, inter alia, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.

Paroline v. United States, 134 S. Ct. at 1719 (internal quotation marks and citations omitted).

## ANALYSIS

The Court concludes that, although A. Antonio caused the victim a compensable loss, the United States did not meet its burden to establish that the helicopter transport was medically necessary.  Accordingly, 18 U.S.C. § 3663A(b)(2)(A) does not require the Court to order A. Antonio to pay $40,554.73 in restitution to Berkley Administrators -- the cost which Berkley Administrators incurred for the helicopter transport.  The Court concludes, however, that the $700.00 in medical costs incurred by the IHS was medically necessary to Doe's treatment on the night of February 12, 2015.  Consequently, the Court orders A. Antonio to pay $700.00 in restitution to IHS.

I.      **THE COURT OVERRULES A. ANTONIO'S OBJECTION TO RESTITUTION ON THE GROUND THAT DOE DID NOT SUFFER ANY ECONOMIC LOSS BECAUSE OF THE INJURY THAT A. ANTONIO CAUSED.**

First, the Court overrules A. Antonio's Objection to restitution on the basis that Doe "did not suffer any damages or economic loss due to the injury A. Antonio caused." Objections at 2. The United States correctly reasons that, although Doe did not incur out-of-pocket economic damages, A. Antonio's argument poses the question whether an insurer that covers the costs of Doe's medical expenses is entitled to restitution. See Response at 1. The answer to that question is settled: a court may order a defendant to make restitution to insurers that cover a victim's losses. 18 U.S.C. § 3664(j)(1) provides: "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obliged to provide the compensation . . . ." § 3664(j)(1). "[T]he person who provided or is obliged to provide the compensation," as the statute provides, plainly encompasses insurance companies. 18 U.S.C. § 3664(j)(1) (alteration added). The Tenth Circuit and other Courts of Appeals have held that a district court must order restitution to be paid directly to an insurer if there was a "victim" within the MVRA's language and if the insurer compensated the victim for some or all of the victim's loss. See United States v. Wooten, 377 F.3d at 1144 (affirming award of $17,751.58 in restitution to insurance companies for the loss of two motor vehicles). See also, e.g., United States v. Fonseca, 790 F.3d 852, 854-55 (8th Cir. 2015)("[T]he district court properly ordered that restitution be paid to [the victim's insurer] for that portion of the victim's loss it had compensated.")(alteration added); United States v. Schmidt, 675 F.3d 1164, 1168 (8th Cir. 2012)("[W]e have interpreted section 3664(j)(1) and the MVRA as providing for direct, mandatory restitution to a private insurer where a victim receives

compensation for its losses from that insurer . . . .")(alteration added)(citing United States v. Mancini, 624 F.3d 879, 882 (8th Cir. 2010)).

In this case, Doe is indisputably a victim within the MVRA's wording.  18 U.S.C. § 3664(j)(1).  The question, therefore, is whether the officer suffered a loss for which the MVRA provides restitution.  The Court agrees with a number of Courts of Appeals, which have held that a victim has nonetheless suffered a loss that is compensable even if he did not pay any of his medical expenses out of pocket.  See United States v. Schmidt, 675 F.3d at 1169 (holding that the victim's injuries "generated medical bills and gave rise to a cognizable loss under the MVRA," even though an insurer "compensated [the victim] for her loss by covering the necessary medical costs"); United States v. Cliatt, 338 F.3d 1089, 1093-95 (9th Cir. 2003)("When the victim of a crime enumerated in the MRVA suffers bodily injury, and when the United States government covers her necessary medical expenses . . . 18 U.S.C. § 3664 requires that the restitution be paid directly to the government.").  Here, Doe's injuries generated his medical bills and gave rise to a loss under the MRVA.  Because Doe suffered bodily injury, he was entitled to receive from A. Antonio "an amount equal to the cost of necessary medical and related professional services and devices relating to physical [care.]"  18 U.S.C. § 3663A(b)(2)(A)(alteration added).  Because Doe's insurers compensated Doe for his loss "by covering the necessary medical costs, section 3664(j)(1) allow[s] the court to bypass the inefficient 'roundabout procedure'" of ordering restitution paid to Doe and having Doe's insurers recover from Doe.  United States v. Schmidt, 675 F.3d at 1169 (alteration added).  Accordingly, the Court overrules A. Antonio's Objection.

## II.   THE COURT OVERRULES A. ANTONIO'S OBJECTION TO RESTITUTION ON THE GROUND THAT A. ANTONIO'S CONDUCT DID NOT PROXIMATELY CAUSE THE HELICOPTER TRANSPORT.

The Court also overrules A. Antonio's Objection that A. Antonio's conduct did not proximately cause the helicopter transport.  See Objections at 7-8.  A. Antonio does not dispute that she proximately caused Doe's injuries; rather, she argues that she did not proximately cause the helicopter transport's costs.  See Objections at 7-8.   A. Antonio contests that, because the physician's assistant at the IHS hospital ordered the helicopter transport, A. Antonio did not proximately cause the helicopter transport, and, as a result, the Court cannot order her to pay restitution for its cost.  See Objections at 8.

A. Antonio correctly notes that the MRVA has a proximate cause requirement.   See Objections at 7-8.  See also 18 U.S.C. § 3663A(a)(2); United States v. Zander, 794 F.3d at 1233.  A. Antonio's offense of conviction, however, proximately caused the helicopter transport.  At the hearing, the Court stated that there is "nothing speculative about how or why the helicopter transport expenses were accrued."  Tr. at 5:3-5 (Court).  The Court also noted that the PSR properly outlines the nexus between Doe's cause of injury and his treatment.  See Tr. at 5:7-9 (Court).  Moreover, in light of A. Antonio's offense of conviction -- namely, kicking Doe twice in his throat -- it was not a "mere fortuity" that the physician's assistant ordered a helicopter to transport Doe to UNMH for medical treatment that the IHS hospital might not have been able to provide.  Paroline v. United States, 134 S. Ct. at 1719.  The Court acknowledges that the physician assistant directly caused the helicopter to carry Doe to Albuquerque; however, the physician's assistant's action was neither unrelated to, nor attenuated from, A. Antonio's offense of conviction.   Accordingly, under the doctrine of proximate causation, the physician's assistant order of helicopter transport was not an intervening cause for which A. Antonio cannot be legally

responsible.  See United States v. Zander, 794 F.3d at 1233 (explaining that, if an intervening cause was "'directly related to the offense conduct,'" the intervening cause does not preclude a defendant's crime of conviction from being the proximate cause of a victim's loss)(quoting United States v. Speakman, 594 F.3d at 1172).  The Court thus overrules A. Antonio's Objection regarding proximate cause.  The Court also notes that A. Antonio's Objection perhaps more accurately goes to whether the helicopter transport was medically necessary, which the Court addresses next.

### III.    THE COURT SUSTAINS A. ANTONIO'S OBJECTION THAT THE HELICOPTER TRANSPORT WAS NOT MEDICALLY NECESSARY.

The Court sustains A. Antonio's Objection that the helicopter transport was not medically necessary.  18 U.S.C. § 3663A(b)(2)(A) requires the Court to issue an order of restitution that A. Antonio "pay an amount equal to the cost of necessary medical and related professional services" provided to Doe as a consequence of A. Antonio's offense of conviction.  A. Antonio objects that the helicopter transport was not medically necessary.  18 U.S.C.A. § 3664(e) provides that "any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."  The United States bears the burden of demonstrating, by a preponderance of the evidence, that the helicopter transport was medically necessary.  See 18 U.S.C.A. § 3664(e)("The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.").

The United States does not meet its burden to show that the helicopter transport was medically necessary.  The Court generally shares the United States' concerns about the provision of medical care at Acoma-Canoncito-Laguna Hospital to those persons who may suddenly find themselves in emergent need.  Based upon the record before it, however, the Court concludes that the United States did not establish by a preponderance of the evidence that the $40,554.73

that Berkley Administrators incurred for the helicopter transport was medically necessary.  In its briefing, which the United States filed before the hearing, the government conceded that it "does not have enough information to substantiate a $41,000 medical bill at this time."  Response at 3. At the hearing -- held after the USPO disclosed in the Second Addendum additional information regarding the helicopter transport -- the government noted that its argument might be different  in other cases where helicopter transport is necessary.  See Tr. at 11:13-19 (Adams).  The Court concludes from the government's position that, at the hearing, the United States maintained its concession that the helicopter transport was medically unnecessary in this case.  See Tr. at 11:7-8 (Court, Adams).

The Court notes that it would not require much more proof from the United States to establish the medical necessity of the transport.  For example, if the United States had submitted an affidavit from a medical doctor stating that she examined the Acoma-Canoncito-Laguna Hospital physician's assistant's recommendation and that she would have made the same decision, then such an affidavit would likely have been sufficient to establish the government's burden.  The Court thus sustains A. Antonio's Objection, because the United States did not establish the helicopter transport was medically necessary.

Finally, the Court notes that the United States did not concede that the $700.00 in expenses that the IHS incurred was medically unnecessary.  See Response at 3.  The Court concludes on the record before it that the medical care that Doe received at the Acoma-Canoncito-Laguna Hospital, excluding the decision to order helicopter transport, was medically necessary.  See Tr. at 13:4-11 (Baiz, Cde Baca, Court).  Accordingly, the Court overrules A. Antonio's Objection relating to the $700.00 incurred by the IHS in connection to the medical care it gave to Doe on the night of February 12, 2015.

**IT IS ORDERED** that the Objections in Defendant's Objections to Restitution, filed September 30, 2015 (Doc. 38), are overruled in part and sustained in part.  The Court will: (i) overrule Defendant A. Antonio's Objection to restitution on the ground that the victim did not suffer any damage or economic loss because of the injury caused; (ii) overrule A. Antonio's Objection to restitution on the ground that A. Antonio's conduct did not proximately cause the helicopter transport; (iii) sustain A. Antonio's Objection that the helicopter transport was not medically necessary; and (iv) impose $700.00 in restitution to the Indian Health Service.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Damon P. Martinez
    United States Attorney
Kimberly Brawley
David Adams
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Stephen P. McCue
    Federal Public Defender
Sylvia A. Baiz
    Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

        *Attorneys for the Defendant*